USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 13, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                    :
UNITED STATES OF AMERICA                                            :
                                                                    :
                                                                    :
            -v.-                                                    :
                                                                    :        15-cr-616 (KBF)
CHRISTOPHER GOFF,                                                   :
                                                                    :        OPINION & ORDER
                                                                    :
                            Defendant.                              :
                                                                    :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

On May 26, 2015, the Government filed a 30-page sealed criminal complaint (the "Complaint"), charging six individuals, including defendant Christopher Goff, in two counts. (Compl., ECF No. 1.) On September 9, 2015, Goff, three of the other individuals named in the aforementioned Complaint, and two others, were charged in a sealed indictment (the "Indictment"). (Indictment, ECF No. 51.) The Indictment was unsealed on September 14, 2015. (ECF No. 52.) The Indictment charged Goff and his co-defendants with (1) conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 349 (Count One), (2) wire fraud, in violation of 18 U.S.C. §§ 1343 & 2 (Count Two), and (3) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Three). Trial on the Indictment is scheduled to commence on October 5, 2016.

On April 19, 2016, Goff filed an omnibus pretrial motion seeking several forms of relief, including: (1) dismissal of the Indictment based on due process violations by the Government in connection with Goff's arrest and the search of his

residence or, alternatively, dismissal following an <u>in camera</u> review by the Court of the grand jury minutes in this matter, (2) an order suppressing evidence that the Government obtained in a May 2015 search of Goff's residence or, alternatively, a <u>Franks</u> hearing concerning representations made by the Government to obtain the search warrant, (3) dismissal of Count III of the Indictment, and (4) dismissal of the Indictment's forfeiture allegations.  (ECF No. 120.)  The Government opposed the motion on May 12, 2016.  (ECF No. 125.)  Goff filed his reply brief on May 26, 2016.  (ECF No. 128.)

Goff's motion is largely premised on serious allegations of government misconduct that his counsel first previewed to the Court at the April 14, 2016 conference held in this matter.  (<u>See</u> Apr. 14, 2016 Tr. at 31:18-40:13.)  Goff's counsel asserted that the basis for the Complaint underlying the warrant for Goff's arrest and the search of his home was significantly misleading in light of information subsequently disclosed by the Government.  In particular, Goff argues that a statement by a cooperating witness undercuts any probable cause determination and demonstrates that the Government proceeded against Goff without a sufficient factual basis.  This argument seriously misconstrues the factual allegations in the Complaint and the basis for Goff's inclusion as a defendant in this matter.  Having now had the opportunity to consider these allegations—along with the documents underlying them—in full, and with the benefit of the Government's written response, the Court finds that these serious allegations are without any

basis in law or fact.  Accordingly, for the reasons set forth below, Goff's motion is
without merit and is DENIED in its entirety.

I.       BACKGROUND

         A.       The Complaint

         On May 26, 2015, the Government filed the Complaint charging Goff and five
other defendants—Lin Miao, Yong Jason Lee, Michael Pearse, Yongchao Liu, and
Michael Pajaczkowski—with conspiracy to commit mail and wire fraud in violation
of 18 U.S.C. § 1349, and charged Goff, Miao and Pajackowski with conspiracy to
commit money laundering in violation of 18 U.S.C. § 1956(h).  The Complaint,
which was made by Special Agent Quoc Tuan Nguyen of the Internal Revenue
Service's Criminal Investigation Division, describes the defendants' alleged means
and methods of a scheme to auto-subscribe mobile phone customers to premium text
message subscription services without the customers' authorization and consent,
and also describes the defendants' efforts to launder the proceeds of that fraudulent
scheme through fake invoices and payments to shell companies.  (See Compl.)  The
allegations in the Complaint are supported by descriptions of dozens of emails
between the co-conspirators that explain how the fraud was executed and the
particular roles that each of the defendants played in the scheme; it also describes
other communications and payments between the co-conspirators.  (Compl. ¶¶ 24-
33, 40-44.)

         The Complaint alleges that Goff's particular role in the scheme was to sell
lists of phone numbers to Miao and others that Goff received through his
employment with a mobile aggregator that served as an intermediary between

mobile phone carriers and digital content providers (such as Miao's company), offering premium text messaging services.  (Compl. ¶¶ 10, 14, 18, 24.)  The Complaint supported Goff's role in the scheme through, inter alia, emails between Miao and Goff obtained from Miao's company's internal servers that showed that, in or around the middle of 2011, Goff began emailing Miao spreadsheets of phone numbers that Miao used to auto-subscribe consumers to premium texting services.  (Compl. ¶ 24.)  The Complaint also stated that Goff sent these emails to Miao from a personal email address, which Goff instructed Miao to email him at so that Goff's employer would not catch them.  (Compl. ¶ 24(a) & n.2.)  The emails also showed that Miao reported back to Goff the money that they were making from the scheme, providing a breakdown of the revenue derived from phone numbers that Goff had provided to Miao.  (Compl. ¶ 24(e).)  An email that Miao sent to Goff's personal email address on or about July 31, 2011, reflected that the revenues that Miao derived from the scheme for the month of July 2011 exceeded $35,000.  (Compl. ¶ 24(e).)  The Complaint also relies on emails to establish that Goff sent invoices to Miao for purported "Advertising Services/Consulting" fees and asked Miao to make payments to a shell company that Goff controlled.  (Compl. ¶ 44.)

In establishing certain aspects of the alleged conspiracies, the Complaint also relied, in part, on information provided by a cooperating witness ("CW-1") that worked with Miao at the texting company.  The Complaint relied on information provided by CW-1 to establish that Miao's company ceased conducting legitimate business in or around the middle of 2011 and began making money only from the

4

fraudulent auto-subscribing scheme, and to establish that CW-1 and Miao received distributions of tens and hundreds of thousands of dollars per month from the scheme.  (Compl. ¶¶ 34, 35.)

B.    The Search Warrant

On May 27, 2015, the Government obtained a search warrant from Magistrate Judge Jean Rosenbluth of the Central District of California authorizing a search of Goff's residence located in that district.  (Gov't Opp. Mem., Ex. B, ECF No. 125-2.)  The Government supported the search warrant application with an affidavit from Special Agent Elizabeth Keating of the Internal Revenue Service's Criminal Investigation Division that cited to the probable cause set forth in the Complaint; the affidavit also attached the Complaint as an exhibit.  The affidavit further set forth evidence tying Goff and the shell company that he used to receive payments for his role in the scheme to Goff's residence.

The Government executed a search of Goff's residence pursuant to the aforementioned warrant on May 28, 2015, and Goff was arrested on that date.

C.    The Indictment

On September 9, 2015, a grand jury returned an Indictment charging Goff and five others—not including Miao—in three counts.  In Count Two, the Indictment charged one substantive count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, and two separate conspiracies—Count One charged conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349 and Count Three charged conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  Goff was among the subset of defendants charged in all three counts.  The

Indictment also includes separate forfeiture allegations for Counts One and Two on the one hand (Indictment ¶ 34), and Count Three on the other (Indictment ¶ 35).

The Indictment alleges the same auto-subscription scheme as the previously described Complaint.  It alleges that the defendants engaged in a multi-million dollar scheme to defraud mobile phone customers by placing unauthorized charges for premium text messaging services on the customers' phone bills through a practice known as "auto-subscribing."  (Indictment ¶ 1.)  The Indictment alleges that the defendants carried out this scheme by causing unsolicited text messages to be sent to mobile phone users that offered subscriptions to receive recurring text messages containing various types of content.  (Indictment ¶ 2.)  The Indictment further alleges that while consumers who received these text messages typically ignored or deleted them, they were billed or "auto-subscribed" for these premium text messaging services—at a rate of $9.99 per month—without their consent. (Indictment ¶ 2.)  The Indictment alleges that these consumers were billed each month unless and until they noticed the charges and took action to unsubscribe, and sometimes continued to be billed when their attempts to dispute the charges and obtain refunds were unsuccessful.  (Indictment ¶ 2.)

After providing an overview of the alleged scheme, the Indictment explains the industry for premium text messaging services (Indictment ¶¶ 5-11) and the roles of the charged defendants (Indictment ¶¶ 12-14)  It then goes on to detail the chronology of events leading to the creation of the scheme (including approximate dates) (Indictment ¶¶ 15-22) and the defendants' efforts to conceal the scheme

(Indictment ¶¶ 23-24).  The Indictment details specific acts carried out by each defendant, including Goff, in furtherance of the charged conspiracy.  (Indictment ¶¶ 17-18, 24.)  Specifically, the Indictment alleges that Goff, who had access to millions of mobile phone numbers through his position as the account manager for the content provider at the mobile aggregating company, agreed to and did provide large batches of phone numbers via email in exchange for payment.  (Indictment ¶ 17.)  The Indictment further alleges that other defendants ran the phone numbers provided by Goff, as well as others, through their auto-subscription platform and billed the subscriptions through the mobile aggregator.  (Indictment ¶ 18.)  The Indictment alleges that Goff (and others) took steps to conceal his involvement in the fraud, including using shell companies to receive payments for assistance with the scheme and using personal or shell company email addresses to correspond about the scheme.  (Indictment ¶ 24.)

###### D.   Post-Indictment Disclosures

On December 11, 2015, the Government sent a letter to counsel for all of the defendants stating that it was unaware of any Brady material relating to the defendants, but nevertheless disclosed certain statements made by two witnesses in an abundance of caution.  As relevant to the pending motion, the Government disclosed the following information provided by CW-1 (who has been identified as Andrew Bachman) during an interview with the Government:

> "Bachman stated that Christopher Goff may have been
> unaware of a lot of the illicit activity at [the Mobile
> Aggregator] because he was not high up in the chain of
> command.  Bachman further stated that he did not recall
> personally making any side payments to Goff and never

> had any conversations with Goff about [the Texting
> Company's] auto-subscription practices."

(Sercarz Decl., Ex. B, ECF No. 101-2.)  Goff's counsel subsequently requested that

the Government produce Jenks Act material for Bachman in light of its reliance on

Bachman to obtain the arrest and search warrants (Simon Decl., Ex. 3, ECF No.

119-3); Goff contends that the Government has refused to do so to date.

## II.   DISCUSSION

As stated above, Goff's omnibus motion seeks several forms of relief,

including: (1) dismissal of the Indictment based on alleged due process violations by

the Government or, at least, an <u>in camera</u> review by the Court of the grand jury

minutes in this matter to determine if a due process violation has occurred, (2)

suppression of evidence that the Government obtained in a May 2015 search of

Goff's residence or, alternatively, a <u>Franks</u> hearing on this issue, (3) dismissal of

Count III of the Indictment, and (4) dismissal of the Indictment's forfeiture

allegations.  Below, the Court explains why each of Goff's arguments are without

merit.

### A.   Allegations of Prosecutorial Misconduct

#### 1.   Request to Dismiss the Indictment

Goff argues that the Indictment should be dismissed because the Complaint,

which the Government relied on to obtain the search warrant for Goff's residence

(and the arrest warrant for Goff), was misleading to the point of outrageousness

such that the Government's misconduct constitutes a due process violation.  This

argument seriously misconstrues the record and, accordingly, lacks merit.

a)   Legal Standards

"The district court's authority to dismiss an indictment, whether to eliminate prejudice or to deter official misconduct, is narrowly circumscribed to instances where the misconduct at issue 'amounts to a violation of one of those few, clear rules which were carefully drafted and approved by the Supreme Court and by Congress to ensure the integrity of the grand jury's functions.'" United States v. Silver, 103 F. Supp. 3d 370, 376-77 (S.D.N.Y. 2015) (quoting United States v. Williams, 504 U.S. 36, 46 (1992)).  The Supreme Court has instructed that a district court should not quash an indictment based upon the sufficiency of the evidence presented to the grand jury or a complaint that a prosecutor's presentation was incomplete or misleading.  Williams, 504 U.S. at 54-55; Bank of Nova Scotia v. United States, 487 U.S. 250, 260-61 (1988) ("The District Court's finding that the summaries offered by IRS agents contained evidence that had not been presented to the grand jury in prior testimony boils down to a challenge to the reliability or competence of the evidence presented to the grand jury.  We have held that an indictment valid on its face is not subject to such a challenge."); see also United States v. Jones, 164 F.3d 620 (2d Cir. 1998) (The power to dismiss an indictment for misconduct before the grand jury "does not permit dismissal on the ground that the evidence presented to the grand jury was unreliable, even if the allegation is that the prosecutor's presentation was incomplete or misleading.") (summary order).

b)   Analysis

Here, Goff's assertion that the Government has committed gross misconduct warranting dismissal of the Indictment is without any support in the record before

the Court.  Goff's accusations notwithstanding, there is nothing in the record to suggest that the Complaint recited facts in an inaccurate way or that it failed to establish probable cause against Goff.  Goff's argument is premised on the notion that the Government relied on Bachman, its cooperating witness, to establish that Goff actively participated in the alleged auto-subscription scheme and/or that Goff received proceeds from the scheme, and that the Complaint instead should have made clear—based on Bachman's statement that the Government disclosed in December 2015—that Bachman was not personally aware of the extent of Goff's knowledge of all aspects of the scheme and never personally made payments to him. Goff's position is meritless for the simple reason that it misrepresents the allegations actually made in the Complaint as well as Bachman's statement disclosed by the Government.  With respect to Goff, the Complaint relied on information obtained from Bachman only to the extent that Bachman established that the auto-subscription scheme existed, and the statements that Goff seeks to rely on are not exculpatory of that fact.  To support Goff's participation in the fraud scheme, the Complaint instead relied on emails exchanged between Goff and Miao (which the Court has described above) that amply supports Goff's knowing participation in the crimes charged.  These emails support that Goff provided mobile phone numbers to Miao and others and that Goff may have known that this resulted in Miao receiving tens of thousands of dollars in revenue on a monthly basis; the emails also support Goff's intentional concealment of his communications with Miao from his employer and that he directed Miao to send Goff's cut to a shell

company that he controlled.  Finally, the Court observes that even if Goff did have some factual basis to support his allegation that the Government misled or otherwise did not provide all relevant information to the grand jury as to the information that the Government learned from Bachman, precedent clearly establishes that this Court may nevertheless not second guess the grand jury's probable cause determination.  E.g., Williams, 504 U.S. at 54-55.

> 2.    Request for In Camera Review of the Grand Jury Minutes

Goff argues that, in the event that the Court declines to dismiss the Indictment based on his accusations of prosecutorial misconduct, the Court should nonetheless at least conduct an in camera review of the grand jury minutes to determine if the Government abused the grand jury process.  This argument too lacks merit.

> a)    Legal Standards

It is well established that grand jury proceedings are "accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." United States v. R. Enterprises, Inc., 498 U.S. 292, 301 (1991) (quoting United States v. Mechanik, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring in judgment)); see also United States v. Gibson, 175 F. Supp. 2d 532, 534 (S.D.N.Y. 2001) ("In order to overcome [the] presumption [of regularity], a defendant must demonstrate some grossly prejudicial irregularity or some other particularized need or compelling necessity."). A defendant seeking dismissal of an indictment for irregularities in the grand jury process faces a high burden—that remedy is "reserved for the truly extreme cases."

United States v. Broward, 594 F.2d 345, 351 (2d Cir. 1979).  In light of the
foregoing, and the strong interest in the secrecy of grand jury proceedings, United
States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958), a court may not review
grand jury minutes "without concrete allegations of Government misconduct,"
United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994).

        b)    Analysis

Here, Goff has failed to present any concrete support for the contention that
there were irregularities before the grand jury or that the Government in any way
abused the grand jury process.  As explained above, Goff's assertion that the
Government misled the grand jury by relying on the Complaint lacks merit.  Goff
has not made any showing that the Complaint misrepresented the information that
the Government learned from Bachman in any way, and he has not otherwise
offered any evidence of misconduct or other irregularities in relation to the grand
jury process.  There is no indication that the Complaint misrepresents any
information that Bachman shared with the Government and, as explained above,
the Complaint relied on the emails exchanged between Goff and Miao to establish
Goff's role in the scheme, rather than on information provided by Bachman.  The
Court therefore denies Goff's motion to the extent he seeks dismissal of the
Indictment or an in camera review of the grand jury minutes.

        B.    <u>Suppression of Evidence</u>

Goff next argues that the evidence seized at his residence pursuant to the
May 27, 2015 search warrant must be suppressed because the Government's
application for that warrant was based on misleading information.  Goff asserts

that, to the extent that the Court is not presently inclined to suppress the evidence seized at his home, the Court should at least conduct a hearing pursuant to Franks v. Delaware, 548 U.S. 154 (1978).  As with his claim that the Indictment should be dismissed, Goff again relies primarily on his assertion that the Complaint (upon which the affidavit supporting the search warrant application heavily relied) fails to establish sufficient probable cause because it misleadingly suggested that Bachman had informed the Government that Goff was involved in, and had knowledge of, the alleged auto-subscription scheme.  As explained below, Goff mischaracterizes the allegations that establish probable cause against him in the Complaint, and his arguments are otherwise without merit.

      1.   <u>Legal Standards</u>

A search warrant is valid where it rests on a finding that probable cause exists to believe that a crime has been committed and evidence or instrumentalities of the crime will be found in the place to be searched.  <u>United States v. Travisano</u>, 724 F.2d 341, 346 (2d Cir. 1983).  "A magistrate's determination of probable cause should be paid great deference by reviewing courts."  <u>Illinois v. Gates</u>, 462 U.S. 213, 236 (1983) (quotation marks omitted).  A reviewing court must "resolve any doubt about the existence of probable cause in favor of upholding the warrant."  <u>United States v. Salameh</u>, 152 F.3d 88, 113 (2d Cir. 1998).  Furthermore, an affidavit supporting a search warrant carries a "presumption of validity."  <u>Franks</u>, 438 U.S. at 171.  In certain circumstances, however, a defendant may "challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the resulting search."  <u>United States v. Martin</u>, 426 F.3d 68, 73 (2d Cir.

2005).  "One such circumstance is where the affidavit in support of the search warrant is alleged to contain deliberately or recklessly false or misleading information."  United States v. Canfield, 212 F.3d 713, 717 (2d Cir. 2000).

A court must conduct a hearing to test the veracity of a search warrant affiant's statements "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause."  Franks, 438 U.S. at 155-56; see United States v. Falso, 544 F.3d 110, 125 (2d Cir. 2008); Salameh, 152 F.3d at 113.  "Unsupported conclusory allegations of falsehood or material omission cannot support a Franks challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof."  Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994).  "The Franks standard is a high one."  Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991).

Even where a false statement was intentionally made, "[i]f, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a Franks hearing."  Salameh, 152 F.3d at 113.  "Omissions from a warrant affidavit 'are not material unless they cast doubt on probable cause.'"  United States v. Mandell, 710 F. Supp. 2d 368, 374 (S.D.N.Y. 2010) (quoting United States v. Marin-Buitrago, 734 F.2d 889, 895 (2d Cir. 1984)).

2.    <u>Analysis</u>

Here, a review of the Government's search warrant application—and the Complaint in particular—establish that the magistrate judge clearly had probable cause to issue the warrant because there was a substantial basis to conclude that a search of Goff's residence would uncover evidence of wrongdoing. <u>Gates</u>, 462 U.S. at 236. Goff's argument to the contrary rests solely on the assertion that the Complaint misleadingly and powerfully suggested that Bachman, an extremely reliable cooperating witness, had informed the Government that Goff was involved in and had knowledge of the auto-subscription scheme described in the Complaint, when in fact the material turned over by the Government in December 2015 showed that Bachman did not know of the extent of Goff's involvement or awareness in illicit activity. As the Court explained above in relation to Goff's argument that the Indictment should be dismissed against him, the Complaint does not purport to support Goff's participation or role in the auto-subscription scheme based on information obtained from Bachman. Rather, the Complaint supports these facts based on emails between Miao and Goff in which Goff emailed spreadsheets of phone numbers that Miao used to auto-subscribe consumers to premium texting services, and in which Miao informed Goff how much money he was making based on the phone numbers that Goff had provided. (Compl. ¶ 24.) Bachman's statement that the Government disclosed in December 2015 is not, moreover, even exculpatory of Goff's involvement in illegal activity; it only reflects that Bachman lacked personal knowledge of the extent of Goff's participation. Goff's motion to suppress and for a <u>Franks</u> hearing is therefore meritless because Goff has made no showing,

much less a substantial showing, that any statement in the affidavit supporting the search warrant application or the Complaint was false.  Moreover, even to the extent that information purported to have been obtained from Bachman in the Complaint could be construed as establishing Goff's participation in the scheme, Goff has made no showing—in light of the allegations relating to emails that Goff exchanged with Miao—that any allegedly false statement had an impact on the magistrate judge's probable cause determination.

     C.    <u>Request for Dismissal of Count Three</u>

Goff argues that the Court should dismiss Count Three of the Indictment—which charges conspiracy to commit money laundering—because the Indictment does not fairly inform him of the charge against which he must defend.  As explained below, because the Court finds that Count Three properly alleges a conspiracy between Goff and others to commit money laundering, there is no basis upon which to conclude that Goff is entitled to dismissal of this charge.

     1.    <u>Legal Standards</u>

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1); <u>United States v. Stringer</u>, 730 F.3d 120, 123-24 (2d Cir. 2013).  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974); <u>see</u> <u>United States v. De La Pava</u>, 268 F.3d 157, 162 (2d Cir. 2001) ("An indictment must sufficiently inform

the defendant of the charges against him and provide enough detail so that he may plead double jeopardy in a future prosecution based on the same set of events."). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." Hamling, 418 U.S. at 117 (quotation marks omitted). "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (quotation marks omitted).

The Second Circuit has "repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity" where the charges have "stated the elements of the offense and provided even minimal protection against double jeopardy." Stringer, 730 F.3d at 124. "[I]n an indictment for conspiring to commit an offense-in which the conspiracy is the gist of the crime-it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002).

Goff seeks dismissal of Count Three, which charges a conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). "Conspiring to launder money requires that two or more people agree to violate the federal money laundering statute, and that the defendant 'knowingly engaged in the conspiracy with the

specific intent to commit the offenses that [are] the objects of the conspiracy.'"

United States v. Garcia, 587 F.3d 509, 515 (2d Cir. 2009) (quoting United States v.

Huezo, 546 F.3d 174, 180 (2d Cir. 2008)); see United States v. Chu, 183 F. App'x 94,

97 (2d Cir. 2006) (summary order).  The object of the conspiracy charged in Count

Three is transaction money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i),

"which prohibits certain financial transactions . . . involving the proceeds of certain

unlawful activities when the defendant knows 'that the transaction is designed in

whole or in part . . . to conceal or disguise the nature, the location, the source, the

ownership, or the control of the proceeds of specified unlawful activity.'"  Garcia,

587 F.3d at 515-16 (quoting 18 U.S.C. § 1956(a)(1)(B)(i)).  Section 1956(h) does not

require proof of an overt act in furtherance of the conspiracy.  Whitfield v. United

States, 543 U.S. 209, 219 (2005).

      2.   Analysis

     The allegations in Count Three of the Indictment easily satisfy the sufficiency

standards set forth above to charge a violation of 18 U.S.C. § 1956(h).  Count Three

alleges that from at least 2011 up through and including 2013, Goff, defendants

Darcy Wedd and Erdolo Eromo, and other co-conspirators, agreed to commit money

laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), by facilitating the transfer of

funds from certain bank accounts, which contained proceeds of the auto-

subscription fraud scheme alleged in Count Two, to bank accounts of nominee

companies controlled by Goff, Wedd, Eromo, and others.  (Indictment ¶ 32.)  The

Indictment further alleges that Goff (and others) caused cash to be sent and

received through the mail and via other co-conspirators for the purpose of

concealing payments that Goff (and others) received for his role in the auto-subscription fraud scheme.  (Indictment ¶ 32.)  The Indictment goes on to allege that Goff and his co-conspirators engaged in these transactions knowing that the property transferred involved the proceeds of some form of unlawful activity and that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity.  (Indictment ¶ 33.)

The foregoing allegations track the language of the statute charged and state the approximate time and place of the alleged crime.  In other words, Count Three contains the elements of the charged money laundering conspiracy, fairly informs Goff of the charge against which he must defend, and is sufficient to enable him to plead an acquittal or conviction to bar any future prosecution for the same offense.  To the extent that Goff argues that the Indictment does not clearly allege a joint scheme between him and the other two defendants charged in Count Three (i.e. Wedd and Eromo) and that he has not been informed of the charge against him, this argument is meritless.  The Indictment clearly alleges (and the underlying Complaint clearly explains) that there were other conspirators, such as Miao, who sent proceeds of the auto-subscription scheme to Goff and others through shell companies.

     D.    <u>Request for Dismissal of Forfeiture Allegations</u>

Lastly, Goff argues that the Court should dismiss the forfeiture allegations in the Indictment against him because the Indictment fails to set forth the specific property that the Government alleges is subject to forfeiture (see Indictment ¶¶ 34-

35); he contends that the forfeiture allegations are so ambiguous that the Indictment could be read to be seeking forfeiture of all of Goff's property or none of it, and that this ambiguity precludes Goff from preparing a defense to these allegations. As explained below, this claim is without any legal basis and is accordingly denied.

Pursuant to Fed. R. Crim. P. 32.2, which now governs criminal forfeiture procedures, an indictment "need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." Fed. R. Crim. P. 32.2(a). As Goff himself acknowledges, even prior to the enactment of the explicit language in Fed. Crim. P. 32.2(a) cited above, courts in the Second Circuit have long held that the Government need not identify specific property in the Indictment, United States v. Grammatikos, 633 F.2d 1013, 1024-25 (2d Cir. 1980); United States v. Rigas, 281 F. Supp. 2d 660, 672 (S.D.N.Y. 2003), and there is no basis upon which this Court could impose such an obligation here. Because the Government's forfeiture allegations fully comport with the Federal Rules of Criminal Procedure and Second Circuit precedent, the Court denies Goff's motion to the extent it seeks dismissal of the Government's forfeiture allegations.

III.   CONCLUSION[1]

For the foregoing reasons, Goff's omnibus pretrial motion is DENIED in its entirety.

---

[1] The Court has considered Goff's other arguments and concludes that they are without merit.

The Clerk of Court is directed to close the motion at ECF No. 118.

SO ORDERED.

Dated:      New York, New York
            June 13, 2016


_____
KATHERINE B. FORREST
United States District Judge