UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                              :
    UNITED STATES OF AMERICA               :
                                              :     S3 15 Cr. 616 (KBF)
        - v. -                          :
                                              :
    CHRISTOPHER GOFF and                   :
    JASON LEE,                             :
                                              :
                          Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S MOTION *IN LIMINE*


GEOFFREY S. BERMAN
United States Attorney for the Southern District
of New York
One St. Andrew's Plaza
New York, New York 10007


Jennifer L. Beidel
Jilan Kamal
Assistant United States Attorneys
     -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | S3 15 Cr. 616 (KBF) |
| - v. - | : | |
| | : | |
| CHRISTOPHER GOFF and | : | |
| JASON LEE, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PRELIMINARY STATEMENT

Christopher Goff ("Goff") and Jason Lee ("Lee") (collectively, the "defendants") are charged in a superseding indictment alleging that, from in or about 2011, up to and including in or about 2013, they participated in a conspiracy to defraud wireless cellular telephone customers by charging them for Premium SMS ("PSMS") services without the customers' knowledge or authorization.  Trial is currently scheduled to begin on January 22, 2018.

In advance of trial, the Government respectfully moves *in limine* to (a) preclude the defendants from introducing testimony that they were engaged in otherwise lawful activity during the conspiracy period; and (b) admit evidence regarding the defendants' knowledge of compliance and regulatory issues at Tatto.

## BACKGROUND

The Government expects that the evidence at trial will show that the defendants and other co-conspirators engaged in a scheme to profit personally from a particular type of fraud against mobile phone customers, known to the members of the conspiracy as auto-subscription.  Goff was an account manager at Mobile Messenger, a mobile aggregator company that operated as, among other things, a middleman between "digital content providers" who provided PSMS services and

mobile telephone carriers such as AT&T and Verizon Wireless.  Lee was an employee at Tatto, a digital content provider that worked with Mobile Messenger.

Goff and others at Mobile Messenger engaged in auto-subscribing with Lee and others at Tatto, where mobile phone customers were auto-subscribed to PSMS services (chiefly entertainment content) from Tatto, using Mobile Messenger's billing connections with mobile telephone carriers.  Executives at Tatto received proceeds from these auto-subscriptions, and then distributed those proceeds to Lee at Tatto, Goff at Mobile Messenger, and others involved in the scheme.  The funds were transferred to the co-conspirators in a number of ways, including in cash, through expensive gifts (such as a Mercedes SUV) and payments of expenses (such as rent), and by wire transfer to shell companies set up and controlled by members of the conspiracy, including Goff and Lee.

## DISCUSSION

I.      **[MIL 1] THE DEFENDANTS SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF OTHERWISE LAWFUL CONDUCT AND ARGUING THAT IT IS PROBATIVE OF INNOCENCE**

To the extent the defense intends to offer evidence of otherwise lawful conduct in which the defendants engaged around the time of the charged conspiracy, and contend that it is probative of their innocence, the Government respectfully requests that such evidence be precluded.

### A.  Applicable Law

Generally, "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."  *United States* v. *Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990).  "Evidence of a defendant's past 'good acts' is only relevant where 'a defendant is alleged to have always or continually committed bad acts or where the evidence of good acts would undermine the underlying theory of a criminal prosecution."  *United States* v. *Balboa*, No.

12 Cr. 196 (PAC), 2013 WL 6196606, at *3 (S.D.N.Y. Nov. 27, 2013) (quoting *United States v. Damti*, 109 Fed. App'x 454, 455–56 (2d Cir. 2004)).

In *Scarpa*, for example, the defendants were charged with various racketeering offenses. *Id.* at 997-98.  The Government alleged that the defendants frequently congregated with each other at a location known as the "Wimpy Boys Social Club."  *Id.* at 1010.  During the prosecution, the Government learned that state law enforcement authorities had installed an eavesdropping device in the Social Club for a time but had intercepted only "innocuous" conversations by the defendants or conversations relating to other uncharged criminal conduct. *Id.*  The defense sought to obtain and introduce into evidence these "innocuous" conversations because "the very innocuousness of the [defendants'] statements renders them relevant as they are probative of the defendants' innocence."  *Id.*

The Second Circuit affirmed the district court's decision to exclude evidence, "by way or testimony or stipulation, of the existence of the bug and the absence of relevant intercepted conversations by the defendants."  *Id.* at 1011.  The Second Circuit quoted the district court's statement that defendants in criminal cases "cannot hope to use a process of elimination to defend themselves by presenting evidence of their noncriminal activities." *Id.*  "[P]roof of the absence of criminal acts on specific occasions" is inadmissible.  *Id. Accord*, *United States* v. *Gotti*, 784 F. Supp. 1013, 1011 (E.D.N.Y. 1992) ("[A] defendant cannot establish that he did not commit a crime as to A because he did not commit a crime as to B.").[1]

---

[1] *See also United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (rejecting defense argument that "evidence of innocent travel [to Jamaica] was necessary to rebut the government's allegation that [the defendant] had been involved in other cocaine importations from Jamaica"); *United States* v. *Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming, in case involving fraudulent asylum applications, exclusion of evidence that defendant had "prepared other, non-fraudulent

More recently, in *United States* v. *Al Kassar*, 660 F.3d 108 (2d Cir. 2011), the Second Circuit affirmed the district court's exclusion of classified, similar "prior good act" evidence under Federal Rule of Evidence 404, which restricts the use of character evidence.  In *Kassar*, a jury convicted the defendants of various offenses stemming from a scheme to supply a foreign terrorist organization with surface-to-air missiles.  At trial, the district court rejected the defendants' attempt to offer classified evidence regarding their contacts with Spanish intelligence officials, through which the defendants sought to show they lacked the intent to join the scheme at issue.  660 F.3d at 122-23.  The Second Circuit affirmed the exclusion of the evidence, concluding, among other things, that the evidence was "prior act evidence used to 'prove the character of a person in order to show action in conformity therewith,'" and therefore, not admissible.  *Id.* at 123 (quoting Fed. R. Evid. 404(a)).

### B.  Discussion

The Government intends to offer evidence regarding how Mobile Messenger and Tatto operated, including otherwise lawful conduct, in order to explain accurately to the jury the relationships among the defendants and their relationships with other co-conspirators and participants in the mobile phone industry.

To the extent the defendants seek to introduce evidence of otherwise lawful activities they were engaged in during the relevant time period, in order to argue that such evidence is probative of their innocence, such evidence would be inadmissible under the principles outlined in *Scarpa* and *Kassar*.  The Government has not alleged that the defendants engaged in a pattern of "ceaseless" criminal conduct but instead that, during the charged conspiracy period, they

applications" because evidence "was simply irrelevant to whether the applications charged as false statements were fraudulent").

engaged in a scheme to auto-subscribe mobile phone customers and then launder the proceeds. As such, much like the evidence of the "innocuous" conversations at the social club in *Scarpa*, evidence suggesting that the defendants engaged in legal conduct in their professional lives is not exculpatory, and it is therefore irrelevant. Similarly, the evidence would also be inadmissible under Rule 404(a), because the defendant would be seeking to use his supposed prior good acts to argue that, because he did not engage in criminal conduct in those areas, he did not engage in the activity charged in the Indictment. *Kassar*, 660 F.3d at 122-23. Accordingly, this Court should not permit the defendants to argue that their engagement in otherwise lawful conduct is probative of innocence. Evidence of such lawful conduct—other than background evidence necessary to explain the relationship among the defendants and co-conspirators, and the basis for their actions—is not admissible because it is irrelevant, prohibited character evidence.

## II.    [MIL 2] EVIDENCE OF DEFENDANTS' KNOWLEDGE OF TATTO'S COMPLIANCE ISSUES SHOULD BE ADMITTED

The Government should be permitted to offer evidence that the defendants were aware of certain audit, compliance, and regulatory issues with Tatto's PSMS business, including the Attorneys General actions brought in various states and the September 2011 aggregation audit conducted by Mobile Messenger. These facts are direct evidence of the defendants' knowledge, they complete the story of the crimes charged, and they flesh out the relationship of trust between the co-conspirators.

### A.  Applicable Law

It is well established that "the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy." *United States* v. *Bagaric*, 706 F.2d 42, 64 (2d Cir. 1983); *see also United States* v. *Lam Lek Chong*, 544 F.2d 58, 63 (2d Cir.

5

1976).  An act in furtherance of the conspiracy is not uncharged criminal conduct subject to Rule
404(b)—it is part and parcel of the charged conduct.  As the Second Circuit has repeatedly held,
"[a]n act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an
'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged."  *United
States* v. *Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992); *United States* v. *Diaz*, 176 F.3d 52, 79
(2d Cir. 1999); *United States* v. *Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ("When the indictment
contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the
conspiracy itself."); *see also United States* v. *Towne*, 870 F.2d 880, 886 (2d Cir. 1989)
("[U]ncharged criminal activity is not considered "other crimes" evidence under Fed R. Evid.
404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it
[is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary
to complete the story of the crime [on] trial." (internal quotation marks omitted; alterations in
original)).

It is also settled that evidence of "other acts" is admissible under Rule 404(b) if it is (1)
advanced for a proper purpose; (2) relevant to the crimes for which the defendant is on trial; and
(3) has probative value that is not substantially outweighed by any unfair prejudicial effect.  If
requested, such evidence must be admitted with limiting instructions to the jury.  *See United States
v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States v. Ramirez*, 894 F.2d 565, 568 (2d
Cir. 1990) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)); *United States v.
Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988) ("other acts or crimes are admissible under Rule 404(b) to
prove matters other than the defendant's criminal propensity").

The Second Circuit "follows an 'inclusionary' approach to the admission of other act
evidence, so that 'evidence of prior crimes, wrongs or acts is admissible for *any* purpose other than

6

to show a defendant's criminal propensity.'" *United States v. LaSanta*, 978 F.2d 1300, 1307 (2d Cir. 1992) (emphasis in original).  In particular, the Second Circuit has held that prior acts are admissible under Rule 404(b) to "inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed."  *United States* v. *Williams*, 205 F.3d 23, 33-34 (2000) (quoting *United States* v. *Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992)).  Such prior acts are also admissible "to explain, for example, the basis for the trust between coconspirators."  *United States* v. *Reifler*, 446 F.3d 65, 92 (2d Cir. 2006) (internal quotation marks omitted); *United States* v. *Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) ("We have held repeatedly that it is within the court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators.").

**B.  Discussion**

Under those well-settled legal principles, evidence that the defendants knew about Tatto's compliance issues and negative audit results, including the Attorneys General actions brought in various states and the September 2011 aggregation audit conducted by Mobile Messenger, is properly admissible.

The Government intends to introduce evidence through a cooperating witness, Lin Miao, that, prior to engaging in the charged auto-subscribing scheme, employees of Tatto tricked consumers into subscribing to similar services through the use of deceptive marketing practices. The Government expects Miao to testify that Tatto's deceptive marketing practices led to, among other things, an enforcement action by the Washington State Attorney General, as well as an increase in audits and suspensions and a corresponding downturn in the company's revenue.  As

7

Miao is expected to explain, the downturn in Tatto's revenue was part of what led Miao and others to begin auto-subscribing, in an effort to boost profits.

The Government anticipates that its presentation of evidence on this point will be relatively limited. It does not have additional discovery to provide regarding this evidence, beyond the 3500 material; it does not intend to introduce a copy of the complaint filed by the Washington State Attorney General or other state Attorneys General; and it does not intend to elicit testimony that either of the trial defendants was personally involved in Tatto's deceptive marketing practices. The Government does, however, anticipate offering evidence that: (1) Lee knew about Tatto's deceptive marketing and Attorneys General actions because he was instructed by Miao to remove from the lists of phone numbers to be auto-subscribed any phone numbers from states in which Tatto had been the subject of an action by that state's Attorney General; and (2) as Tatto's account manager, Goff was made aware of compliance issues with and audits of Tatto, including a September 2011 aggregation audit that specifically addressed auto-subscription. This evidence is admissible as direct evidence because it is "inextricably intertwined with the evidence regarding the charged offense" and "necessary to complete the story of the crime [on] trial." *Towne*, 870 F.2d at 886. Moreover, it is also admissible under Rule 404(b) to demonstrate the relationship of trust between co-conspirators – *i.e.*, between Miao and Goff and between Miao and Lee – and to explain how the conspiracy developed. *See Rosa*, 11 F.3d at 334.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that these motions *in limine* should be granted.

Dated:          New York, New York
                January 5, 2018

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney
                                    Southern District of New York


                        By:         */s/ Jennifer L. Beidel*
                                    Jennifer L. Beidel/Jilan Kamal
                                    Assistant United States Attorneys
                                    (212) 637-2212/2192